## THE LILLIE.

### CROSBY v. THE LILLIE.

*(Circuit Court, S. D. Florida.   March 26, 1890.)*

1. ADMIRALTY—WAGES—LIEN.
    The master of a steam-boat, who was also manager of the company owning it, brought suit for the engineer's wages, in his absence, knowingly claiming less than was due, and wrote the engineer that he could afterwards sue for the remainder. The latter never admitted that the claim was for the full amount, except by ratifying the suit. *Held* no waiver of his claim for the balance.

2. SAME—LACHES.
    The fact that, as a libelant, he stood by at a sheriff's sale of the boat without giving notice of his additional claim, does not discharge his lien therefor, when it appears that some stockholders of the original company were interested as purchasers, and the master as their agent bought in the vessel.

3. SAME.
    The engineer, having removed to a different port, libeled the vessel on her first appearance there. *Held* that, although a year had elapsed, he had not lost his lien where the delay caused no change for the worse to claimants.

In Admiralty.   On appeal from district court.   40 Fed. Rep. 367.

*W. D. McKinstry,* for libelant.

*W. E. Richardson,* for claimant.

PARDEE, J.   In March, 1887, the steam-boat Lillie, owned by the Montgomery & Prattville Daily Line, was navigating the waters of the Alabama and Coosa rivers.   March 5th the libelant was employed on said steam-boat as engineer, and continued in such employment until December, 1887, when the boat was seized under an execution issued in favor of A. A. Janney & Co., on a judgment said firm had obtained against the Montgomery & Prattville Daily Line in the circuit court of Montgomery county. Ala.   During his employment he was paid various sums on account, but at the time of said seizure there was a conceded balance due him as wages.   On the 23d of November, 1887, a suit was instituted in favor of libelant against the Montgomery & Prattville Daily Line before a justice of the peace in the city of Montgomery, claiming balance of wages due to October 20th, $95.85.   Process issued in said suit, and on November 30th, on trial, a judgment was rendered for the plaintiff against the defendant for said sum and costs.   December 8th a writ of *fieri facias* was issued therein, which was returned December 19, 1887, with the following indorsement:

"Levied on steam-boat Lillie, her furniture and tackle, and same was sold on 21st December, 1887, for six hundred and twenty-five dollars, ($625.00,) and the money applied to prior executions, and no property to satisfy this *fi. fa.*"

Early in January following a libel was prepared claiming wages due to libelant, and was filed in the district court for the middle district of Alabama; but, for some reason or other not apparent, no process issued thereon.   The boat lay at Montgomery some time after the sale of it under execution, and continued in the waters of the middle district until January, 1889, when, on its arrival in Mobile, the libel in this case was

filed. In the district court the claimant made an elaborate answer, setting out a number of defenses, to which answer exceptions were sustained, and the claimant had leave to further answer. The further answer filed in the case sets forth several defenses; but, on exceptions filed thereto, all issues were eliminated but the question of equitable estopped by reason of libelant's alleged presence at the sale of the boat under the execution aforesaid. In this court the whole case has been argued, and the defenses made are as follows: (1) That the amount claimed ($241.05) is excessive, because to make that sum libelant has charged wages at $50 a month up to October 1st, and thereafter at $75 a month, when the agreement is alleged to have been that his wages were to be $50 a month, with a further agreement that during certain time of sickness, and while the boat was aground, he was to charge nothing; and because the bill that he made out, upon which suit was brought in the justice's court in Montgomery, was for only $95.85, claiming that sum only in suit being a waiver of any greater claim. (2) That the libelant was present at the sale by the sheriff, and made no objection to such sale, nor any claim of any lien on the boat for his wages; and afterwards entered into the employ of the purchasers, and rendered services to said boat, for which he was paid, at which time he made no claim for wages due him. (3) Laches on the part of the libelant in asserting his claim.

The evidence shows that the Montgomery & Prattville Daily Line was in financial difficulties in the month of November, at which time the general manager of the company and the master of the Lillie, (who, by the way, is now the master, and represents the claimants in this case,) knowing that wages were due the libelant for his services, himself prepared, in the absence of the libelant, the bill upon which the suit was brought in the justice's court, proved up the claim, and otherwise therein represented the libelant's interest. It appears by the evidence also that, at the time said master caused the bill to be made out, he knew it did not cover all the libelant's wages, and he informed libelant, by letter, that he could "get out a later one afterwards." There is no evidence in the case showing that libelant ever asserted or consented that the amount sued for before the justice was all that was due him for wages, except, of course, the fact that he ratified the action of the master in bringing the suit. Under these circumstances, the court cannot find that the libelant has waived any part of his claim.

While the libelant was present at the sale, the evidence does not establish that he said anything himself, or heard anything said, with regard to a good title being given by the sale, or in any way, except by silence, perhaps, participated in inducing any person whatever to buy the said boat as free and clear of liens. It does appear in the case that one of the owners of the Montgomery & Prattville Daily Line was one of the purchasers at the sheriff's sale, and has continuously held, and now holds, his interest in the said boat; that the master of the boat and agent of the owners, who was also a stockholder while she belonged to the Montgomery & Prattville Daily Line, retained some interest in said boat, though not as a stockholder, and, at the time of the seizure herein,

was the master and agent of the owners, who acquired at the sale on execution. The court has a right to infer, from this state of facts, that the purchasers at the sheriff's sale were charged with notice of the claim of libelant, and of his right to be paid by preference over the general creditors of the Montgomery & Prattville Daily Line. The claimants took the title of the vessel *cum onere*. The derivation of their title from the owners, through a sheriff's sale on execution, was a circumstance to put them on inquiry. The maxim, *caveat emptor*, fully applies to such purchases. All this is well settled in admiralty.

Practically, the position of the parties has not been changed from the day of the sheriff's sale until the bringing of this libel; no one of the claimants has changed his position for the worse, or in any wise been injured by libelant's delay in bringing his libel. Considering that the libelant lived in Mobile; was employed in Mobile for this service; after he had been discharged returned to Mobile, and then libeled the boat the first time that she returned to that port; and that, in fact, only 12 months elapsed before bringing the libel, and that no party has been injured by the delay,—the court is not disposed to convict the libelant of laches by holding his demand as stale. See *Coburn* v. *Insurance Co.*, 20 Fed. Rep. 644.

So far as concerns the dispute to as the amount of wages, it is only necessary to say that the district court yielded to the contention of the claimants, and allowed wages only at $50 per month. As the libelant has not appealed, he does not complain of that allowance. It seems clear that the decree of the district court should be affirmed, and it is so ordered.